694 F.2d 188
 UNITED STATES of America, et al., Appellees,
v.
STATE OF WASHINGTON, et al., Appellants.
 No. 81-3502.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 8, 1982.
Decided Dec. 7, 1982.
 
 James M. Johnson, Sr., Asst. Atty. Gen., Olympia, Wash., for appellants.
 Thomas Pacheco, Dept. of Justice, Washington, D.C., Carl V. Ullman, Taholah, Wash., for appellees.
 Appeal from the United States District Court, Western District of Washington.
 Before WRIGHT, KILKENNY and CANBY, Circuit Judges.
 KILKENNY, Circuit Judge.
 
 
 1
 This action came before the district court pursuant to its continuing jurisdiction over certain disputes involving Western Washington Indian Tribes and the State of Washington. See, United States v. Washington, 384 F.Supp. 312, 419 (W.D.Wash.1974), aff'd 520 F.2d 676 (CA9 1975), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). This particular controversy arose on January 8, 1981, when the State of Washington asked the district court to issue either a temporary restraining order or preliminary injunction to prevent the Quinault Indian Nation from taking any further steelhead trout from the 1980-81 Quinault River Steelhead Run. The district court denied the request. In addition, the district court determined the respective rights of the parties to the Quinault River Steelhead Run. This appeal followed.
 
 
 2
 Under the compulsion of Consolidated Salish & Kootenai Tribes, etc. v. Namen, 665 F.2d 951 (CA9 1982), cert. denied, --- U.S. ----, 103 S.Ct. 314, 74 L.Ed.2d --- (1982) (Justices Rehnquist and White dissenting), we affirm the decision of the district court.
 
 
 3
 Confederated Salish held that Indians party to a treaty owned the lake bed under that part of a lake specifically included in and forming a boundary of the reservation, when the Indians were dependent on fishing when the treaty was signed. This case presents the same situation.
 
 
 4
 Justice Rehnquist has suggested that Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), requires that a treaty specifically grant rights in land under navigable water, or that land will be treated as held by the United States for the benefit of the future state. Confederated Salish, --- U.S. ---- at ---- - ----, 103 S.Ct. 314 at 315, 74 L.Ed.2d --- (1982) (Rehnquist, J., dissenting), denying cert. to 665 F.2d 951 (CA9 1982). He expressed "substantial doubt as to whether the Court of Appeals reached the right conclusion" on the land ownership issue in Confederated Salish. Id. at ----, 103 S.Ct. at 315.
 
 
 5
 There are factual differences between Montana and Confederated Salish. However, as Justice Rehnquist points out, the exact limits of the Montana holding are not clear. Given the importance of certainty where issues of ownership of land are involved, the possibility of conflict suggested by Justice Rehnquist warrants consideration of the issue by the Supreme Court.
 
 
 6
 AFFIRMED.
 
 CANBY, Circuit Judge, concurring:
 
 7
 I concur in Judge Kilkenny's opinion, except that I do not share the expressed doubt as to the proper limits of the Montana and Confederated Salish holdings. In my view the two decisions are distinguishable for reasons stated in Confederated Salish, 665 F.2d at 961-62, and, as the majority here concludes, the present case falls squarely within the rule of Confederated Salish.
 
 
 8
 I also wish to add a few words of explanation about the controversy before us. The dispute in this case arises from the fact that a large portion of the steelhead run in the Quinault River never proceeds far enough upstream to leave the boundaries of the Quinault Indian Reservation, which encompass the River from its mouth into Lake Quinault, 21 miles inland. A minor part of the run, however, migrates upstream beyond Lake Quinault and the Reservation. The district court ruled that non-treaty fishermen (i.e., the general public) were entitled only to 50% of the harvestable run of those steelhead that would, if not intercepted, pass upstream beyond the boundaries of the Reservation. The State contends that the district court should have allocated to non-treaty fishermen 50% of the harvestable portion of the entire run, including those fish that never pass beyond the boundaries of the Reservation. Our decision affirms the order of the district court.
 
 
 9
 It is already established in this case that the tribe retains exclusive fishing rights within the boundaries of its Reservation. United States v. Washington, 384 F.Supp. 312, 332 and n. 12 (W.D.Wash.1974) ("Final Decision I"), aff'd, 520 F.2d 676 (9th Cir.1975), cert. denied, 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). It is true that the tribe may not rely on that exclusive right in order to take more than its equal share of fish passing through the reservation. Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 683-84, 99 S.Ct. 3055, 3073-3074, 61 L.Ed.2d 823 (1979). On the other hand, it is inherent in the tribe's exclusive control of its reservation that non-treaty fishermen would be entitled to no part of the run if none of the fish ever passed beyond the reservation (or, indeed, if the river did not). If some few fish pass beyond the reservation, then the non-treaty fishermen are certainly entitled to harvest their share of those fish. The passage of those few fish, however, does not entitle non-treaty fishermen to half of all of the harvestable fish in the river. Nor does the principle change if more than a few passed; the non-treaty share must still be derived from that run of fish to which non-treaty fishermen are entitled to access. The district court's formula is therefore a proper one.